**GIDATEX, S.R.L., Plaintiff,**

v.

**CAMPANIELLO IMPORTS, LTD., Campaniello Imports of Florida, Ltd., and Campaniello Enterprises, Inc., Defendants.**

No. 97 Civ. 9518(SAS).

United States District Court, S.D. New York.

June 2, 1998.

brand in the high-end furniture market. *See id.* at ¶ 4.

Thomas G. Bailey, Jr., Carole E. Klinger, New York City, for Plaintiff.

Nathan Lewin, Cynthia Thomas Calvert, Timothy J. Preso, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Gidatex, S.r.L. ("Gidatex") filed a Complaint on December 30, 1997, alleging violations of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), common law trademark infringement and common law unfair competition. Plaintiff now moves to enjoin defendants Campaniello Imports, Ltd., Campaniello Imports of Florida, Ltd., and Campaniello Enterprises, Inc. (hereinafter collectively referred to as "Campaniello" or "defendant") from using plaintiff's "Saporiti Italia" trademark in connection with the sale of furniture. Plaintiff is also moving for expedited discovery. For the following reasons, these motions are denied.

## I. Factual Background

### A. Campaniello's Prior Distribution Agreement

In 1974, Campaniello agreed to become a distributor for two Italian furniture manufacturers, Fratelli Saporiti Industria Arredamenti, S.n.c., and Proposals, s.r.l. *See* Declaration of Thomas Campaniello, president and sole shareholder of each of the Campaniello businesses ("Campaniello Dec.") at ¶ 3. Campaniello's sales territory grew to encompass the United States, Canada, Mexico, the Caribbean, Central America and South America. *See id.* Sometime in the mid–1970's, the manufacturers began selling their furniture under the "Saporiti Italia" name. The manufacturers merged in 1982, adopting "Saporiti Italia" (hereinafter "Saporiti") as their new corporate name. *See id.* Largely as a result of its marketing efforts, according to Campaniello, Saporiti Italia became a well-known

### B. The Termination of the Distribution Agreement

Under the supervision of an Italian bankruptcy court, Saporiti leased its assets to Gidatex in 1994. *See id.* at ¶ 5. Gidatex and Campaniello entered into a distributorship agreement similar to the one between Saporiti and Campaniello, but they were unable to sustain an amicable relationship. *See id.* at ¶¶ 5–9. After a series of disputes, Gidatex terminated the agreement in December, 1995. *See id.* at 10. Its counsel warned Campaniello at that time that it considered Campaniello's use of the Saporiti Italia mark to constitute trademark infringement. *See* Declaration of Thomas G. Bailey, Jr., plaintiff's counsel ("Bailey Dec."), Ex. B.

At the time of the termination, Campaniello had in stock approximately $1 million worth of Saporiti Italia furniture. *See id.* at ¶ 11. In the intervening two and a half years, it has sold approximately two-thirds of that stock. *See id.* at ¶ 14. It maintains signs bearing the Saporiti Italia name on its showrooms in New York City, Dania, Florida, and Dallas, Texas, as well as telephone listings under the Saporiti Italia name in those cities. *See id.* at ¶ 15. It has not been able to sell its entire Saporiti Italia stock, it claims, largely because it now lacks access to the customized services that Saporiti and Gidatex formerly provided, and which high-end designer furniture customers demand. *See id.* at ¶ 13.

### C. Prior Litigation

On October 16, 1995, Campaniello sued Saporiti and Gidatex in this Court, asserting claims for unjust enrichment and fraud. *See Campaniello Imports, Ltd. v. Saporiti Italia S.P.A.,* No. 95 Civ. 7685, 1996 WL 437907, at *3 (S.D.N.Y. Aug.2, 1996), *aff'd,* 117 F.3d 655 (2d Cir.1997). The district court dismissed all of Campaniello's claims, *see id.* at *9, a decision that was affirmed by the Second Circuit on June 26, 1997.

## II. Discussion

### A. Plaintiff's Motion for a Preliminary Injunction

Gidatex now requests an injunction requiring Campaniello to remove the Saporiti Italia signs currently on display at its showrooms and to cease listing its phone number under the Saporiti Italia name. To obtain preliminary injunctive relief, a party must demonstrate (1) that it is likely to suffer irreparable injury absent the injunction, and (2) that it is likely to succeed on the merits of its claim. The second requirement may also be satisfied by a showing that the claim raises serious legal questions, and that the balance of hardships tips decidedly in favor of the moving party. *See Sal Tinnerello & Sons, Inc. v. Stonington,* 97–7919, 141 F.3d 46, 1998 WL 152981, at *5 (2d Cir. Apr.3, 1998). Of these requirements, a showing of likely irreparable harm is often referred to as the most important. *See, e.g., Citibank, N.A. v. Citytrust,* 756 F.2d 273, 275 (2d Cir.1985).

█ Campaniello argues that Gidatex's delay in seeking injunctive relief demonstrates that it is not truly threatened with irreparable harm. While delay "may not warrant the denial of ultimate relief, it may, standing alone, preclude the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency" upon which the availability of the remedy is predicated. *Tough Traveler, Ltd. v. Outbound Products,* 60 F.3d 964, 968 (2d Cir. 1995) (internal citations and quotation marks omitted)). Courts have not imposed rigid deadlines by which a request for preliminary injunctive relief must be made: In some circumstances, even a relatively brief delay may be too long. *See, e.g., Citibank,* 756 F.2d at 276–77 (ten weeks). If the movant can provide a credible explanation for its inactivity, however, much longer delays may be excused. *See, e.g., King v. Innovation Books,* 976 F.2d 824, 831 (2d Cir.1992) (eight month delay did not preclude preliminary injunctive relief where plaintiff had used that period to investigate defendant's acts and to inform defendant of his objections); *MGM–Pathe Communications Co. v. Pink Panther Patrol,* 774 F.Supp. 869, 873 (S.D.N.Y.1991) (seven month delay caused by defendant political group's threat to generate bad publicity excused).

█ A finding of inexcusable delay in trademark cases is most likely when the circumstances of the case permit an inference that the owner of the mark has timed the request for injunctive relief so as to inhibit competition. *See Tom Doherty Associates. Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 39 (2d Cir.1995). Even when no such explicit inferences are drawn, however, courts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months. *See Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.,* 909 F.Supp. 896, 910 (S.D.N.Y.1995) (three months); *Century Time Ltd. v. Interchron Ltd.,* 729 F.Supp. 366, 368 (S.D.N.Y. 1990) (over two months); *Comic Strip, Inc. v. Fox Television Stations, Inc.,* 710 F.Supp. 976, 981 (S.D.N.Y.1989) (three months). *But see Gilder v. PGA Tour, Inc.,* 936 F.2d 417, 423 (9th Cir.1991) (district court's finding that four month delay was reasonable was not clearly erroneous).[1]

Here, the parties, distribution agreement was unequivocally terminated in December, 1995. Gidatex does not dispute that it was aware of Campaniello's decades-old use of the Saporiti Italia trademark at that time. It nevertheless failed to move for a preliminary injunction until February 26, 1998. Two years of this period, it suggests, should be excused in light of the parties' extended litigation concerning the validity of their contract. It is not clear, however, why Gidatex could not have requested the injunction it now seeks in the midst of the earlier suit. In any event, the litigation ended on June 26, 1997—eight months before the instant mo-

---

1. The existence of prejudice to the non-movant caused by the movant's delay is also a relevant factor. *See Tom Doherty Associates,* 60 F.3d at 39. Contrary to Gidatex's implicit assertion, however, *Tom Doherty* does not require a finding of prejudice to be made before a request for a preliminary injunction can be denied on grounds inexcusable delay: Even in the absence of prejudice, an unwarranted delay may demonstrate that the movant has no need for the drastic remedy of a preliminary injunction.

tion was filed—when the Second Circuit affirmed the dismissal of Campaniello's original claims.

Gidatex argues that three of the eight months should be excused because Campaniello could have appealed the Second Circuit's decision to the Supreme Court during that time. Given the relative infrequency with which petitions for certiorari are granted, this concern seems rather far-fetched. It is not apparent, moreover, why the theoretical possibility of Supreme Court review prevented Gidatex from taking action to halt Campaniello's use of the mark.

Even giving Gidatex credit for those ninety days, however, a four and a half month delay remains. Gidatex contends that this period should be excused as well, as it was spent "investigating the extent and nature" of Campaniello's behavior. Reply Memorandum of Law in Further Support of Plaintiff Gidatex, S.r.L.'s Motion for a Preliminary Injunction at 7. This unsupported assertion, however, is insufficient to justify an extended delay, particularly as the "extent and nature" of Campaniello's allegedly offending use was already well known. *See Bear U.S.A.*, 909 F.Supp. at 910 (delay not excused by plaintiff's "investigation" of infringing activity of which it was already aware).

■ Therefore, even granting Gidatex generous extensions, its claim of irreparable injury is clearly belied by its own dilatory behavior. This behavior is consistent with the hypothesis that Gidatex is concerned less with the loss of control over the Saporiti Italia mark and more with the suppression of Campaniello as a potential competitor, now that Gidatex is attempting to reinvigorate its sales efforts in the United States. In these circumstances, granting the requested injunction would be inappropriate.

### B. Plaintiff's Motion for Expedited Discovery

■ Gidatex also requests expedited discovery on the issue of Campaniello's use of the Saporiti Italia mark. In evaluating a request for expedited discovery, the following factors must be considered:

(1) irreparable injury, (2) some probability of success on the merits, (3) some connec-

tion between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Lentjes Bischoff GmbH v. Joy Environmental Technologies, Inc.*, 986 F.Supp. 183, 188 (S.D.N.Y.1997) (quoting *Irish Lesbian and Gay Org. v. Giuliani*, 918 F.Supp. 728, 730 (S.D.N.Y.1996)). As discussed in the previous section, Gidatex has failed to demonstrate irreparable injury; three of the four factors therefore counsel against a grant of expedited discovery. While its claim on the merits appears to be a reasonably strong one, it is not so overwhelmingly likely to prevail at trial that this factor can outweigh the other three. Expedited discovery is therefore unwarranted.

### III. Conclusion

Gidatex's substantial, unexcused delay in seeking injunctive relief vitiate its claim that Camaniello's use of the Saporiti Italia mark threaten it with irreparable injury. Because a showing of likely irreparable injury is required before injunctive relief can be granted, and is effectively a prerequisite to a grant of expedited discovery as well, both its motions are denied.

SO ORDERED: