**GIDATEX, S.r.L., Plaintiff,**

v.

**CAMPANIELLO IMPORTS, LTD., Defendant.**

**No. 97 CIV. 9518(SAS).**

United States District Court, S.D. New York.

May 17, 1999.

Thomas G. Bailey, Jr., Carole E. Klinger, Whitman, Breed, Abbott & Morgan, L.L.P., New York City, for Plaintiff.

Nathan Lewin, Paul F. Enzinna, Anthony J. Bellia, Jr., Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for Defendant.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Gidatex, S.r.L. ("Gidatex") filed this suit against Defendants Campaniello Imports, Ltd., Campaniello Imports of Florida, Ltd., and Campaniello Enterprises, Inc. (collectively "Campaniello") in 1997, alleging violations of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), common law trademark infringement, and

common law unfair competition. Campaniello, in turn, asserted counterclaims for breach of contract, unfair competition, misappropriation and unjust enrichment. All of the counter-claims except unjust enrichment were previously dismissed. *See Gidatex v. Campaniello*, 13 F.Supp.2d 420 (S.D.N.Y.1998). Gidatex now moves for summary judgment on Campaniello's remaining counterclaim. For the reasons stated below, plaintiff's motion is granted.

## I. Background

Familiarity with the facts of this case as described in two prior opinions is presumed. *See Gidatex*, 13 F.Supp.2d 420; *Gidatex v. Campaniello*, 13 F.Supp.2d 417 (S.D.N.Y.1998). Nevertheless, for the purposes of the instant motion, some background is necessary.

From 1974 to 1994, Campaniello acted as the exclusive sales representative for Saporiti Italia, an Italian furniture manufacturer. In March 1994, Campaniello sued Saporiti for breach of contract, fraud, and misrepresentation (the "1994 Litigation"). Subsequently, under the supervision of an Italian bankruptcy court, Saporiti leased its assets to Gidatex, which entered into a distributorship agreement with Campaniello similar to the one between Saporiti and Campaniello ("Gidatex Agreement"). As part of the agreement, Campaniello agreed to withdraw the 1994 Litigation against the Saporiti defendants. In return, Gidatex engaged Campaniello as the exclusive distributor of Saporiti Italia furniture in the United States and other Western Hemisphere countries through

March 31, 1995, with an automatic five-year extension if Gidatex purchased Saporiti's assets.

Campaniello and Gidatex were unable to sustain an amicable relationship and Gidatex verbally terminated the Agreement in April 1995. Immediately after the verbal termination, Campaniello sought compensation from Gidatex for the value of the customer services provided by Campaniello to Saporiti Italia customers. *See* Correspondence of Thomas Campaniello to Dario Fillippini, dated April 17, April 25 and November 3, 1995, attached to Declaration of Thomas Campaniello ("Campaniello Decl."), defendants' president, dated March 17, 1998, Exs. 1, 3, 4.[1]

Within eight months after the verbal termination, Gidatex's counsel requested that Campaniello's counsel "advise [its] client to discontinue the use of the Saporiti trademark in connection with its business." Correspondence of David Botwinik to Stephen Hochhauser, dated December 22, 1995, attached to Declaration of Thomas Bailey, counsel for Gidatex, dated February 24, 1998 ("Feb. 24 Bailey Decl."), Ex. B. Then, in October 1997, Gidatex demanded that Campaniello "cease and desist" any use of the Saporiti Italia trademark.[2] Correspondence from Thomas G. Bailey, Jr. to Campaniello Imports, Ltd., dated October 17, 1997, Feb. 24 Bailey Decl., Ex. D. Campaniello refused to comply with Gidatex's request, believing that it was justified in continuing to use the trademark at those stores carrying the remaining Saporiti Italia stock.[3] *See* Campaniello Decl., at

---

1. In September 1995, Campaniello filed another action against Saporiti and Gidatex. In that action, Campaniello asserted claims for unjust enrichment, fraud and misrepresentation. On August 2, 1996, the district court dismissed all of Campaniello's claims against Gidatex under section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, because the claims were subject to mandatory arbitration under the Gidatex Agreement. *See Campaniello Imports, Ltd. v. Saporiti Italia S.p.A*, 95 Civ. 7685, 1996 WL 437907, at *3 (S.D.N.Y. Aug. 2, 1996) ("Campaniello I"), *aff'd*, 117 F.3d 655 (2d Cir.1997).

2. Gidatex owns the Saporiti Italia trademark bearing U.S. Reg. No. 1,736,617. *See* Plaintiff's Local Rule 56.1 Statement, at ¶ 5.

3. At the time Gidatex terminated its relationship with Campaniello in 1995, Campaniello possessed approximately $1 million worth of Saporiti Italia furniture. *See* Campaniello Decl., at ¶ 11. As of March 1998, Campaniello claims to have sold approximately half of its inventory and to value its remaining inventory at $350,000. *See* Campaniello Decl., at ¶ 14. Campaniello contends that it has been unable to sell its entire Saporiti stock largely

¶ 15. Campaniello continued to use signs bearing the Saporiti Italia name on the storefront of its showrooms in New York City, Dania, Florida, and Dallas, Texas, and to maintain telephone listings under the Saporiti Italia name. In addition, Campaniello continues to use the Saporiti Italia name to advertise its warehouse sales, see Campaniello Decl., at ¶ 15 and Ex. 6, and on its delivery trucks and other vehicles. See Correspondence of Investigator Michael Kessler to Thomas Bailey, dated March 30, 1998, attached to Second Supplemental Declaration of Thomas Campaniello ("Second Supp. Campaniello Decl."), dated January 7, 1999, Exs. D and D4. Gidatex filed this action alleging trademark infringement in December 1997.

According to Campaniello, Gidatex now plans to authorize at least four other American distributorships to sell Saporiti Italia furniture. These distributorships, located in close proximity to existing Campaniello showrooms in New York City, Dania, Florida, Dallas, Texas, and Washington, D.C. will have the right to use the Saporiti Italia name and will sell the same type of furniture that Campaniello still stocks.

## II. Standard of Review—Summary Judgment

Under Rule 56(c), summary judgment shall be granted in favor of the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fac-

tual issue is material if its resolution could affect the outcome of the dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Converse v. General Motors Corp., 893 F.2d 513, 514 (2d Cir.1990). The burden of demonstrating that no factual dispute exists is on the moving party. See Celotex, 477 U.S. at 323, 106 S.Ct. 2548 (1986); Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir.1997). Once this burden has been met, the non-moving party must come forward with evidence that is more than "mere speculation and conjecture," Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990), but "would be sufficient to support a jury verdict in its favor." Goenaga v. March Of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir.1995).

The court must review the evidence in the light most favorable to the non-moving party, resolving all ambiguities and drawing all factual inferences in that party's favor. See D'Amico v. City of New York, 132 F.3d 145, 148 (2d Cir.1998). If there is evidence in the record from which a fair inference may be drawn in favor of the non-movant on a material issue of fact, summary judgment must be denied. See Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir.1994). But, if the evidence presented by the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Scotto v. Almenas, 143 F.3d 105 (2d Cir.1998)(quoting Liberty Lobby, 477 U.S. at 249–250, 106 S.Ct. 2505).

## III. Discussion

Campaniello claims that between the time Gidatex terminated their relationship in April 1995[4] and the present, Campaniel-

---

because it now lacks access to the customized services that Saporiti and Gidatex formerly provided to their high-end designer furniture customers. See id. at ¶¶ 11, 13.

4. Any failure of Gidatex to reimburse Campaniello for services provided before the termination of the Gidatex Agreement is presum-

ably covered by the terms of that agreement, and not the subject of the unjust enrichment counterclaim. The quasi-contractual remedy of unjust enrichment is only available when no express contractual obligation exists. See Arthur Linton Corbin, Corbin on Contracts, § 1.20 (rev'd ed.1993); Clark–Fitzpatrick, Inc. v. Long Island R.R., 70 N.Y.2d 382, 389, 521

lo has protected Gidatex's goodwill, reputation, North American market presence and federally registered trademark for Saporiti Italia furniture. *See* Amended Counterclaim, at ¶¶ 97–99. In addition, Campaniello claims that it has provided services to Saporiti Italia customers who complain about defective merchandise or unfilled orders. *See* Campaniello Decl., at ¶ 12. Campaniello theorizes that Gidatex is now locating its new American distributorships in close proximity to Campaniello showrooms in order to capitalize on the goodwill in the Saporiti name maintained by Campaniello over the previous four years. For example, Gidatex's new distributorship in Manhattan is one block from the Campaniello showroom. *See* Correspondence from Jackie Caputo, Vice President of Nicoletti Italia to Rafaele Saporiti, dated March 12, 1996, attached to Second Supp. Campaniello Decl., Ex. 1. Campaniello advances the theory that, as a result of its aforementioned efforts, Gidatex has been unjustly enriched at Campaniello's expense.

 Unjust enrichment under New York law falls under the umbrella of quasi-contract. *See* E. Allen Farnsworth, *Contracts* § 2.20, at 103–104 (2d Ed.1990); *see also Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 905 (2d Cir.1997) ("[U]nder the quasi-contractual doctrine of unjust enrichment, courts may infer the existence of an implied contract to prevent one person

who has obtained a benefit from another from unjustly enriching himself at the other party's expense."); *Clark–Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987). An unjust enrichment claim under New York law must contain the following elements: (1) the defendant was enriched; (2) enrichment was at the plaintiff's expense; and (3) the defendant's retention of the benefit would be unjust. *See Van Brunt v. Rauschenberg*, 799 F.Supp. 1467, 1472 (S.D.N.Y.1992). The third element is satisfied when the circumstances are such "that equity and good conscience require defendant to make restitution." *Violette v. Armonk Associates, L.P.*, 872 F.Supp. 1279, 1282 (S.D.N.Y.1995). Even assuming that Campaniello's counterclaim met the first requirement, it has not offered any proof that Gidatex's enrichment was at Campaniello's expense. Therefore, Gidatex's motion for summary judgment on Campaniello's unjust enrichment counterclaim is granted.

## A. Whether Gidatex Was Enriched Is A Question of Fact

Campaniello alleges that Gidatex has been unjustly enriched because it now re-enters the North American market in a more advantageous position than it would have without Campaniello's maintaining the presence of and customer service for Saporiti Italia furniture.[5] It also alleges

---

N.Y.S.2d 653, 516 N.E.2d 190 (1987)("it is impermissible ... to seek damages in an action sounding in quasi-contract where the party has fully performed on a valid and written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties").

5. Campaniello relies upon a series of cases holding that a terminated distributor may state a cause of action under a theory of unjust enrichment to recover the value of services that have enhanced the goodwill of its supplier. *See, e.g., Lake Erie Distrib. v. Martlet Importing Co.*, 634 N.Y.S.2d 599, 602 (4th Dep't 1995)(franchisee terminated by beer distributor stated claim that it conferred benefit upon distributor in form of enhanced product recognition and good will through its

marketing and distribution efforts, and that distributor unjustly retained the benefit when franchise terminated); *Dunafon v. Taco Bell Corp.*, No. 93 Cv. 4490, 1997 U.S. Dist. LEXIS 22468, *15 (W.D.Mo.1997)(terminated franchisee's unjust enrichment claim survived Taco Bell's motion to dismiss because plaintiff alleged facts demonstrating benefit conferred to defendant, including developing the good will of the Taco Bell name); *Louis Glunz Beer, Inc. v. Martlet Importing Co., Inc.*, 864 F.Supp. 810, 818–19 (N.D.Ill.1994)(beer distributor's unjust enrichment claim against supplier survives motion to dismiss, however, court stated "[w]e question whether plaintiffs can actually succeed on such a claim"). Nevertheless, there is an appreciable difference between stating a claim for the purposes of a motion to dismiss and supporting a claim

that its efforts increased the goodwill associated with Gidatex. Gidatex offers several legal arguments in opposition to Campaniello's claim.

First, citing *Kagan v. K–Tel Entertainment, Inc.,* 172 A.D.2d 375, 568 N.Y.S.2d 756 (1st Dep't 1991), and *Michele Pommier Models, Inc. v. Men Women N.Y. Model Management, Inc.,* 14 F.Supp.2d 331 (S.D.N.Y.1998), *aff'd,* 173 F.3d 845, 1999 WL 236895 (2d Cir. April 15, 1999), Gidatex argues that to prevail on its unjust enrichment claim Campaniello must show that it performed at Gidatex's behest. However, Gidatex's reliance on these cases is misplaced. In both *Kagan* and *Pommier,* plaintiffs performed services at the behest of a third party, then sought recovery from defendants with whom they had no relationship, contractual or otherwise.

In *Kagan,* the plaintiff contracted with a producer to locate a distributor for a television series. Plaintiff successfully placed the series with the defendant's company. Before paying plaintiff's fees under the contract, the producer went bankrupt. Plaintiff then sued the distributor for payment under a theory of unjust enrichment, arguing that the distributor had received the benefit of plaintiff's contract with the producer. The First Department entered summary judgment for the distributor explaining that "if services were performed at the behest of someone other than the defendant, the plaintiff must look to that person for recovery." 568 N.Y.S.2d at 757 (citing *Citrin v. Columbia Broadcasting,* 29 A.D.2d 740, 286 N.Y.S.2d 706 (1st Dep't. 1968)). Because the plaintiff expected payment from the producer, and not the distributor, and because there was no privity of contract between plaintiff and defendant, the defendant's enrichment could not be unjust. Plaintiff should have proceeded against the producer in bankruptcy court. *See Kagan,* 568 N.Y.S.2d at 758.

with admissible evidence that could support a jury's verdict in favor of the non-moving par-

Similarly, in *Pommier,* a modeling agency sought payment from a competing agency for its work in negotiating a modeling contract for a model to appear in contact lens advertisements. The model was under an exclusive representation contract with plaintiff when it negotiated the contact lens deal. Nevertheless, the model changed agencies while negotiations were underway and the new agency completed the contact lens negotiations. This Court granted defendant's motion for summary judgment on plaintiff's unjust enrichment claim because the former booking agency presented no evidence that it had engaged in negotiations leading to a modeling contract *on behalf of* the new agency. The plaintiff should have looked to either the model or the contact lens company for compensation. *See Pommier,* 14 F.Supp.2d at 338–39.

In the instant case, by contrast, there is, or was, a legally cognizable relationship between the parties. Campaniello is not seeking compensation from Gidatex for services it performed at the behest of a third-party. When a course of conduct exists between the parties, the one thing that is clear is that plaintiff did not perform at the behest of a third party.

■ Second, Gidatex argues that Campaniello must prove that it performed exclusively in the interests of Gidatex and did not benefit from its own efforts. However, no such proof is required to support an unjust enrichment claim. *See, e.g., Lake Erie Distributors,* 634 N.Y.S.2d at 599 (franchisee promoted Molson beer in order to make money selling beer *and* to promote defendant's goodwill through marketing and distribution efforts).

■ Third, Gidatex argues that Campaniello's claim is invalid because Campaniello acted voluntarily, without any expectation of remuneration. In making this argument, Gidatex has conflated the ele-

ty.

ments of two related quasi-contractual remedies. A claim for quantum meruit requires plaintiff to show that it expected compensation; a claim for unjust enrichment does not. *Compare Longo v. Shore & Reich, Ltd.*, 25 F.3d 94 (2d Cir.1994)("to recover in *quantum meruit*, New York Law requires a claimant to establish (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an *expectation of compensation* therefor, and (4) the reasonable value of the services")(emphasis added and internal citations omitted), *with Barr Lab., Inc. v. Quantum Pharmics, Inc.*, 827 F.Supp. 111, 119 (E.D.N.Y.1993) (citations omitted)("Under New York law, an *unjust enrichment* claim will only lie if the plaintiff can show that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendant to make restitution."); *see also D.A. Collins Construction Co. v. ICOS/NCCA A Joint Venture*, No. 91 Civ. 933, 1994 WL 328626, at *21 (N.D.N.Y. June 28, 1994) (explaining difference). Furthermore, the cases cited by Gidatex

as authority for the proposition that voluntary acts cannot support an unjust enrichment claim are distinguishable from the facts of this case.[6] Because Campaniello need not prove that it expected compensation from Gidatex, any fact dispute on this question is a red herring. The sole issue on the first prong is whether Gidatex was unjustly enriched.

Finally, Gidatex argues that Campaniello could not have increased Gidatex's goodwill by maintaining the Saporiti Italia name because goodwill is not separable from the business with which it is associated. *See* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §§ 1.03[7], 2:15, 2:20 (4th ed.1999). While Campaniello cannot itself assert a possessory interest in the goodwill associated with a trademark it does not own, that does not preclude Campaniello from asserting an unjust enrichment claim for allegedly enhancing the goodwill of Gidatex's trademark.[7]

In sum, the question of whether Gidatex was enriched as a result of Campaniello's efforts is a question of fact precluding summary judgment.[8] I turn next to the

---

**6.** *See Cooper v. Salomon Bros., Inc.*, 1 F.3d 82, 86 (2d Cir.1993)(plaintiff failed to state quantum meruit claim against corporation for saving it from criminal indictment because plaintiff was no more than an "officious volunteer"); *Bloomgarden v. Coyer*, 479 F.2d 201, 211–12 (D.C.Cir.1973)(individual seeking finder's fee for bringing defendants together in enterprise not entitled to recover under unjust enrichment theory because in "situations involving personal services" duty to pay not recognized where benefit conferred "gratuitously or officiously" and because plaintiff brought defendants together to secure future business for himself).

**7.** *See Gidatex*, 13 F.Supp.2d at 430 ("Campaniello ... cannot assert an interest in the goodwill associated with the trademark, independent of an interest in the trademark itself").

**8.** The calculations of Mark Shayne, a Certified Public Accountant for Lazar Levine & Felix, L.L.P., showing the increase in the value of Gidatex's business between 1995 and 1998 does not constitute evidence that Gida-

tex was enriched at Campaniello's expense. In fact, Shayne's report assumes that Campaniello has succeeded on its unjust enrichment claim and merely quantifies damages. *See* Declaration of Mark Shayne, dated January 7, 1999 ("Shayne Decl."), Ex. 2 ("assuming the successful assertion by [Campaniello] of its claim for unjust enrichment"). Even so, the speculative nature of Shayne's estimate itself could preclude relief. *See Kenford Co., Inc. v. County of Erie*, 67 N.Y.2d 257, 502 N.Y.S.2d 131, 132, 493 N.E.2d 234 (1986) ("damages may not be merely speculative, possible or imaginary, but must be reasonably certain"). The issue of whether the amount Gidatex has been enriched should be discounted for any damage to Saporiti Italia's goodwill due to Campaniello's alleged mistreatment of customers goes only to the issue of measuring damages. Mrs. Campaniello admits she was "kind of rude" to certain customers because she believed their inquiries to be "fake" and manufactured by private investigators hired by Gidatex for purposes of the lawsuit. *See* Deposition of Sandra Campaniello, dated September 24, 1998, Bailey Decl., Ex. F, at 29–36.

second element of the claim of unjust enrichment—whether the alleged enrichment was at Campaniello's expense.

### B. Campaniello Has Offered No Evidence That Gidatex Was Enriched at Campaniello's Expense

Campaniello argues that it expended resources by providing customer services to purchasers of Saporiti Italia furniture who complained about defective merchandise or unfilled orders, by advertising the sale of its Saporiti Italia stock, and by enhancing Gidatex's goodwill in the Saporiti Italia mark.

### 1. Customer Services, Repair and Advertising

To prove that it expended resources responding to customer complaints and advertising sale of its stock, Campaniello submits several letters and invoices that it sent to Gidatex throughout 1995. *See* Correspondence from Thomas Campaniello to Dario Fillippini, dated April 17 and 25, 1995, Campaniello Decl., Ex. 1, 3; Correspondence from Thomas Campaniello to Saporiti Italia/Gidatex, dated November 3, 1995, Campaniello Decl., Ex. 4, and additional 1995 invoices at Ex. 4. This correspondence indicates that Campaniello handled customer complaints arising prior to the termination of the Gidatex Agreement in April 1995. However, the correspondence does not support Campaniello's contention that it incurred expenses for ongoing customer relations through 1998. Any expenses incurred prior to the parties' termination of their contract should be covered by the terms of that Agreement. Any compensation sought by Campaniello under a quasi-contractual remedy, however, must be for services performed *after* the Agreement was terminated because such a remedy is available only in the absence of a contractual remedy. *See Corbin on Contracts*, § 1.20; *Clark–Fitzpatrick*, 70 N.Y.2d at 389, 521 N.Y.S.2d 653, 516 N.E.2d 190. Campaniello has not offered any proof of expenditures in time or money for customer services, repair, or advertising after the termination of the Agreement.

### 2. Enhancing Gidatex's Goodwill

In addition, Campaniello boldly argues that it incurred expenses enhancing or protecting Gidatex's goodwill in the Saporiti Italia mark, through Campaniello's continued display of the mark. Typically, unjust enrichment claims in the context of trademark infringement litigation are brought by the owner of the mark against the alleged infringer. *See, e.g.,* 1 *McCarthy* § 2:31 (trademark infringement resulting in alleged infringer's increased sales can be characterized as a form of unjust enrichment); *Nora Beverages v. Perrier Group of America, Inc.,* 164 F.3d 736 (2d Cir.1998) (bottler of spring water claiming a distinctive bottle shape and label brought trade dress infringement and unjust enrichment claim against alleged infringers/competitors); *Banff, Ltd. v. Colberts, Inc.,* 996 F.2d 33 (2d Cir.1993) (trademark owner sued alleged infringer for use of registered trademark and unjust enrichment). Here, the reverse has occurred. The alleged infringer, Campaniello, is claiming that it has enriched the owner of a registered trademark through its continued unapproved use of the mark.

Contributing to the peculiarity of Campaniello's claim is the fact while "enhancing" the trademark's goodwill, Campaniello knew not only that its activities were unwanted, but also that they were the subject of contentious litigation. Even if Gidatex's 1995 correspondence allowed some limited continued use of the mark for the purpose of selling the remaining stock, certainly the 1997 cease and desist letter conveyed a clear message to Campaniello that Gidatex neither expected nor desired Campaniello's efforts. Campaniello's assertion that it enhanced Gidatex's goodwill by continuing to display Saporiti Italia signs makes no sense.

In *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106

S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Supreme Court addressed a similar phenomenon. There, the Court granted summary judgment against a group of American television set manufacturers who had brought an antitrust conspiracy claim against their Japanese competitors. The plaintiffs claimed that the defendants had conspired over a twenty-year period to drive American manufacturers out of business by selling televisions in the United States below cost. The defendants planned to recoup their losses, according to the plaintiffs, by charging supercompetitive prices for an extended period once their American competitors were eliminated. Though these allegations were supported by a number of detailed expert witness reports, the Court found that plaintiffs' theory of the case was so implausible that more evidence was required than the plaintiffs had produced. "[I]f the factual context renders respondents' claim implausible—if the claim is one that simply makes no economic sense—respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." 475 U.S. at 587, 106 S.Ct. 1348.

Here, Campaniello's claim makes no economic sense. It asserts that its efforts, undertaken of its own free will and in the face of Gidatex's strenuous opposition, have been detrimental to Campaniello, *i.e.*, enriching Gidatex at Campaniello's own expense. Such behavior is logically inconsistent: good business sense would indicate that Campaniello continued to support the mark because it continued to sell the furniture and because it wished to ensure that its customers would continue to purchase furniture at its stores. Any benefit to Gidatex was a by-product. There is no rational economic motive to explain why Campaniello would have acted at its own expense to enrich Gidatex, a marketplace competitor and frequent legal adversary. Even drawing all inferences in favor of the non-movant, no rational trier of fact could find that Campaniello enriched Gidatex's

goodwill in the Saporiti Italia mark at its own expense.

For the same reasons discussed above, Campaniello cannot prove the third element of its unjust enrichment claim—that Gidatex's retention of any benefit without compensating Campaniello is unjustified. In short, the principles of equity and good conscience cannot require Gidatex to make restitution to Campaniello for any benefit it may have received.

## IV. Conclusion

For the foregoing reasons, Gidatex's motion for summary judgment on Campaniello's unjust enrichment counterclaim is granted. A conference in this matter is scheduled for June 8, 1999 at 4:30 p.m.

SO ORDERED.